UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHN SCHMIDT, et al.,

        Plaintiffs,

v.                                                                          Case No. 08-C-1035

BASSETT FURNITURE INDUSTRIES, et al.,

        Defendant.

## ORDER DENYING MOTION FOR CLASS CERTIFICATION

This putative class action was brought by consumers who contracted to purchase furniture during a liquidation sale conducted at Bassett Furniture Direct ("Bassett Direct"), an authorized dealer of Defendant Bassett Furniture Industries, Inc. ("Bassett"), located in Appleton, Wisconsin. Bassett Direct went out of business before the furniture was delivered, and Plaintiffs have sued Bassett for breach of their purchase contracts with Bassett Direct under an agency theory of liability. Plaintiffs also allege that Bassett violated Wisconsin's Deceptive Trade Practices Act and, together with co-Defendant Wahlquist Management Corporation ("Wahlquist"), engaged and participated in fraud, theft, and conspiracy. The case is presently before me on Plaintiffs' motion to certify the class. Having carefully considered the briefs and arguments of the parties, I conclude that the motion should be denied.

### BACKGROUND

Bassett is a manufacturer and marketer of Bassett branded furnishings. Bassett sells most products at wholesale to independently-owned retailers (some of which are Bassett-licensed dealers)

but sells some products retail, through company-owned stores. In 2003 non-parties David J. Ewald and Amy J. Ewald (collectively, the "Ewalds"), operating as David Ewald Enterprises, LLC, entered into an agreement with Bassett under which the Ewalds would operate a Bassett Furniture Direct Store in Appleton. As the grantor of the dealership, Plaintiffs allege that Bassett had substantial control over Ewald Enterprises and its owners. Bassett was not only the exclusive supplier of the principal furniture inventory of the store, but was also the principal source of credit underlying the store's operation. Plaintiffs also allege that the name of the store, signs and manner of operating the business conveyed to consumers the impression that the store operated by the Ewalds was in fact Bassett's agent. (3rd Am. Compl. ¶¶ 11-12, 17.)

Ewald's business was not successful. By the end of 2007, Ewald Enterprises had a negative net worth of $315, 354 and owed Bassett $380,000. (Aff. of George P. Kersten, Exs. 1, 2, Doc. # 71-2.) Bassett was refusing to fill Bassett Direct's customer orders unless Ewald paid off some of its debt. Finally, in late 2007, with Bassett's knowledge and consent, if not its insistence, Ewald agreed to conduct a liquidation sale so that it could pay off its debt. Ewald contracted with Wahlquist to conduct the liquidation sale. Plaintiffs allege that Bassett and Wahlquist formed a continuing relationship in 2007 to run such liquidation sales "over the period of 2008 through 2010" at 20 to 25 underperforming Bassett stores. (3rd Am. Compl. ¶ 13.)

The liquidation sale at the Appleton store ran from December 2007 to August 2008. The sale was not limited to Bassett Direct's existing inventory, however. The sales personnel who Wahlquist brought in to conduct the liquidation sale also sold furniture from other vendors, and they took orders and received at least partial payment for furniture from Bassett that was to be delivered later. Unfortunately, a substantial amount of the money that customers gave to Bassett Direct in

2

payment for furniture on order was not used to pay for the furniture the customers ordered. Much of it went to pay expenses of the sale and commissions earned on each sale. Under the terms of its contract with Bassett Direct, Wahlquist was reimbursed for all advertising expenses and received a commission of 7% of the gross price of all sales. An additional 6% commission was paid to the sales personnel Wahlquist brought in to conduct the sale.

Most of the money received from customers, however, was used to pay Bassett Direct's pre-existing debt to Bassett. In order to recoup the past-due debt, Bassett had initially required Ewald to pay down its debt by $1 for every $1 of ordered furniture to be released (approved for manufacture and shipment). Over time Bassett tightened its requirements, reducing the amount of furniture released for manufacture and shipment to the store first to 75 cents, then to 50 cents, and ultimately to 25 cents for every $1 paid toward the past-due debt. (Pls.' Br. Class Cert. Dkt. 72 at 4-5.) As a consequence, when individual customers paid in full or in part for furniture on order, their money went first to pay the Ewalds' past-due debt.

Ultimately, according to Plaintiffs, the delivery of the furniture and furnishings ordered by a customer was dependent on subsequent customers paying sufficient cash in advance to satisfy Ewald's debt to Bassett. In essence, Plaintiffs contend, the sale was conducted as a Ponzi-like scheme which required a constant influx of new customers in order for them to receive the furniture they already paid for either in full or in part. The influx of new customers stopped when Wahlquist pulled the sales force, transferred it to another store, and replaced it with a far less effective sales force. Bassett Direct eventually went out of business, and the Ewalds have since filed for bankruptcy. Plaintiffs claim that 188 people were left without the furniture for which they had contracted and made partial or full payment. (Third Am. Compl., Ex. B.) At oral argument on the

motion, counsel for the plaintiffs stated that roughly half of those who did not receive their furniture were able to cancel the charge on their credit card or in some other manner recover their down payment.

These facts form the basis of Plaintiffs' fraud, theft and conspiracy claims against Bassett and Wahlquist. Plaintiffs allege that Bassett and Wahlquist knew that customer payments received for furniture orders would be used to pay Wahlquist's commissions and the prior debt owed Bassett, but failed to disclose these facts to the customers. Under the circumstances, Plaintiffs allege that the Defendants had a duty to disclose the fact that their payments were not being used to purchase the furniture they ordered. Their failure to disclose this information, Plaintiffs contend, constitutes fraud or theft by fraud.

In the motion before the Court, Plaintiffs seek class certification for each of the claims set forth in their Third Amended Complaint, or alternatively, such claims or issues that the Court deems proper. They further seek to define the class as:

> All customers who purchased furniture, furnishings or similar items at the liquidation sale conducted at the Appleton BASSETT FURNITURE DIRECT store between approximately December 2007 and approximately August 2008, except for those customers who received timely delivery of all items which (a) they agreed to purchase at the sale, (b) were genuinely discounted from a true market price and (c) were received from the source and in the condition and quality represented to them at the sale.

(Doc. 71, Motion For Class Certification.)

## ANALYSIS

Rule 23 of the Rules of Civil Procedure provides that one or more members of a class may sue as representative parties on behalf of all members only if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If the four conditions of Rule 23(a) are satisfied, Rule 23(b) permits the matter to be maintained as class action of a specified type. *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006). Because the class action presents a number of "downsides," district courts entertaining motions for class certification under Rule 23 must exercise "caution." *Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742, 744-46 (7th Cir. 2008). In addition, a district court may "split a case by certifying a class for some issues, but not others." *Pella Corp. v. Saltzman,* 606 F.3d 391, 394 (7th Cir. 2010). A class may be certified on liability alone, leaving damages or causation to subsequent individualized assessments. *See, e.g., Arreola v. Godinez,* 546 F.3d 788, 799-800 (7th Cir. 2008); *Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004). However, if at the outset it is clear that a case involves a number of individualized claims that cannot be resolved via class action, it makes little sense to certify a class on a single claim – this would be an inefficient use of judicial resources. *See Clark v. Experian Information Solutions, Inc.,* 256 Fed. Appx. 818, 822 (7th Cir. 2007) ("Because of the need for individualized findings . . . little efficiency would be gained by certifying a class for only particular issues.")

Plaintiffs have the burden of proving that a class should be certified. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Unlike the standard for a motion to dismiss under Rule 12(b)(6), the Court is not bound to accept plaintiffs' allegations as true for purposes of a motion for class certification. *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 676-77 (7th Cir. 2001). A

5

court may look beneath the surface of a complaint to conduct the inquiries identified in Rule 23. *Id.* at 677. While a court is not allowed to engage in analysis of the merits in order to determine whether a class action may be maintained, *Eggleston v. Chicago Journeymen Plumbers' Local Union No.* 130, 657 F.2d 890, 895 (7th Cir. 1981), *cert. denied,* 455 U.S. 1017 (1982), "the class determination generally involves considerations that are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469 (1978). The "boundary between a class determination and the merits may not always be easily discernible." *Eggleston,* 657 F.2d at 895. Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for a court to probe behind the pleadings before coming to rest on the certification question. *General Tel. Co. v. Falcon,* 457 U.S. 147, 160 (1982). With these standards in mind, I will now address each of the Rule 23 factors.

**I. Numerosity**

At oral argument counsel for Plaintiffs indicated that roughly half of the 188 putative class fell into the following category: customers who paid for furniture, did not cancel their payments, and received neither furniture nor a refund. Plaintiffs seek to include the other 90 or so customers in the class under the "benefit of the bargain" theory which I will discuss in detail below.

Even a class of 90 plaintiffs is not, in and of itself, too small to certify. *Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D. Ill.1986) (twenty-nine-member class is sufficient and collecting cases finding numerosity with fewer class members); *Wucsina v. Reliance Elec. Co.,* 129 F.R.D. 164, 168 (N.D. Ind. 1986 ) (numerosity requirement satisfied by class of ninety members). While Rule

6

23 does not identify a magic threshold number required to establish numerosity, "permissive joinder is usually deemed impracticable where the class members number 40 or more." *Chandler v. S.W. Jeep-Eagle, Inc.,* 162 F.R.D. 302, 307 (N.D. Ill. 1995); *Walker v. Bankers Life & Cas. Co.,* 2007 WL 2903180, at *3 (N.D. Ill. Oct.1, 2007) (citing *Hyderi v. Washington Mut. Bank, FA,* 235 F.R.D. 390, 396 (N.D. Ill. 2006)). Thus Plaintiffs have satisfied the numerosity requirement regardless of whether the putative class is comprised of 90 or 188 plaintiffs.

**II. Commonality**

It is necessary to look at each of Plaintiffs' asserted claims in order to determine whether individual issues or common issues predominate. *Simer v. Rios,* 661 F.2d 655, 672 (7th Cir. 1981).

**A. Breach of Contract Claim**

I turn first to the breach of contract claim Plaintiffs assert only against Bassett. To state a claim for breach of contract, a complaint must allege: "(1) a contract between the plaintiff and the defendant that creates obligations flowing from the defendant to the plaintiff; (2) failure of the defendant to do what it undertook to do; and (3) damages." *Brew City Redevelopment Group, LLC v. The Ferchill Group,* 2006 WI App 39 ¶ 11, 289 Wis.2d 795, 714 N.W.2d 582. In order for Plaintiffs to succeed on their breach of contract claim against Bassett under the facts of this case, they must convince the trier of fact that Ewald Enterprises was Bassett's apparent agent for the purpose of entering into the alleged contracts to purchase furniture. The complaint alleges that the store where customers purchased furniture bore the Bassett Direct sign, the order forms used for the transactions bore the name "Bassett Furniture Direct," and most of the customers were ordering

7

furniture being made by Bassett. In a prior order this Court allowed the breach of contract claim to proceed under the theory of apparent agency, reasoning:

> The use of the name Bassett Furniture Direct therefore suggests that when the consumer walks into the store, he or she is dealing directly with Bassett. Moreover, nothing in the form contract would dispel that impression. The form does not even identify Ewald Enterprises, LLC, the legal name of the party with whom the consumer is actually contracting. There is no disclaimer to warn consumers that Bassett Direct is not an agent for the national corporation. Indeed, the fact that orders for future delivery are being taken at a liquidation sale reinforces the impression that the local store is not acting on its own.

(October 20, 2009 Decision and Order at 13.)

But whether each plaintiff reasonably believed Ewald Enterprises was Bassett's agent is necessarily an individualized inquiry. The fact finder must make determinations of reliance and reasonableness. *See McDonald v. Century 21 Real Estate Corp.*, 111 Wis.2d 600, 604, 331 N.W.2d 606 (Ct. App. 1983). Such determinations are individual in nature. Each customer walked into the Appleton store with a different background, understanding and expectation. Some may have been sophisticated consumers well aware that Bassett Direct was a franchise and not an agent of Bassett. On the other hand, some customers may have been unaware of how Bassett does business and were relying entirely on the national brand name. Probably others did not give the question any consideration whatsoever. They simply saw the advertising for a liquidation sale and were hoping for a bargain. To certify a class on the issue of apparent agency would be akin to deciding that the collective understanding of all 188 putative class members was the same. The Seventh Circuit has cautioned against class certification for cases involving claims predicated on alleged collective understandings. *Thorogood v. Sears, Roebuck, and Co.,* 547 F.3d 742, 744 (7th Cir. 2008) (reversing certification of class involving "stainless steel" washing machines because plaintiff could

8

not show that each member of the putative class believed the entire washing machine was made of stainless steel). Here reliance on Bassett's signs and marketing may have been reasonable for certain customers but unreasonable for others. Because of the highly individualized nature of the necessary fact finding related to the issue of apparent agency, Plaintiffs' breach of contract claim does not lend itself to resolution via class action.

Moreover, I am not persuaded by Plaintiffs' suggestion that breach of contract damages under a benefit of the bargain theory are appropriate for resolution through a class action. Plaintiffs bear the burden of proving damages, though exact damages need not be established. *Wisconsin Alumni Research Foundation v. Xenon Pharmaceuticals, Inc.,* 591 F.3d 876, 886 (7th Cir. 2010) ("Under Wisconsin law a plaintiff must present enough evidence to provide a reasonable basis for calculating damages; the evidence will be sufficient if it enables the jury to make a fair and reasonable approximation of damages.") One of the measures of contract damages sought by Plaintiffs is the benefit of the bargain which Plaintiffs define as the difference between the market price of the furniture and the contract price for the furniture. (Third Am. Compl. ¶ 34.) Implicit in calculating such damages is a need to determine the market price of the furniture at the time each customer learned of the contract repudiation. The asking price of furniture prior to a sale is not the market price, but rather a starting point for further negotiations. *See Amico v. Gambeta,* 1985 WL 6885, *4, Ohio App. June 27, 1985 (holding that figures articulated by parties "in the process of trying to make the best deal for themselves" provide "no objective evidence of the market"). Plaintiffs concede that "furniture generally is sold at a discount from the list price." (Dkt. 91 at 11.) Thus, calculating the market price and sales price for particular pieces of furniture requires an individualized analysis. Different pieces of furniture were sold for different amounts, depending

9

on individual negotiations between each customer and a salesperson. The questions related to whether any benefit of the bargain damages are warranted cannot be properly resolved as part of a class action.

### B. Deceptive Trade Practices Claim

Plaintiffs' deceptive trade practices claim against Bassett under Wis. Stat. § 100.18 is also improper for resolution because individual issues predominate. To prevail on a claim under the Deceptive Trade Practices Act ("DTPA"), a plaintiff must prove three elements:

> First, that with the intent to induce an obligation, the defendant made a representation to "the public." Wis. Stat. § 100.18(1). Second, that the representation was untrue, deceptive or misleading. *Id.* Third, that the representation caused the plaintiff a pecuniary loss. Wis. Stat. § 100.18(11)(b)2.

*K & S Tool & Die Corp. v. Perfection Machinery Sales, Inc.*, 2007 WI 70, ¶ 19, 301 Wis.2d 109, 732 N.W.2d 792. Plaintiffs allege that they were misled by the Bassett Furniture Direct sign and "other indicia of agency" and believed that in paying for furniture they were dealing directly with Bassett. (Third Am. Compl. ¶¶ 36-37.) Plaintiffs' DTPA claim must relate to Defendants' affirmative representations because silence – an omission to speak – is insufficient to support a claim under Wis. Stat. § 100.18(1). *Tietsworth v. Harley-Davidson, Inc.,* 2004 WI 32 ¶ 40, 270 Wis.2d 146, 677 N.W.2d 233 (noting the "DTPA does not purport to impose a duty to disclose, but, rather, prohibits only affirmative assertions, representations, or statements of fact that are false, deceptive, or misleading.").

As noted above class certification is often inappropriate for cases involving deceptive trade practices claims predicated on alleged collective understandings. *Thorogood v. Sears, Roebuck, and Co.,* 547 F.3d 742, 744 (7th Cir. 2008) (discussing difficulty of showing that each member of a

putative class believed their clothes dryers were made *entirely* of stainless steel). In *Thorogood v. Sears, Roebuck, and Co.,* Judge Posner noted that individual inquiries would be necessary to determine what each plaintiff thought of the words "stainless steel" imprinted on the clothes dryer and whether the customers even cared. *Id.* at 747. A very similar inquiry would be required in order to resolve Plaintiffs' DTPA claims here. Did the customers who paid for furniture care who they were buying from or did they just like a particular item of furniture in the store? At a minimum, to meet the causation element under § 100.18, plaintiffs would have to show that they saw the Bassett sign or "other indicia of agency" prior to placing their furniture orders. (Third Am. Compl. ¶¶ 36-37.) As in *Thorogood v. Sears, Roebuck, and Co.,* allowing this deceptive trade claim to proceed as a class action would require too much weight to be placed on collective understandings and overlook the individual nature of each decision to purchase furniture.

A claim under the DTPA differs from a claim based on apparent agency in that to succeed on a claim of apparent agency a plaintiff must prove that his or her reliance on the actions of the principal was reasonable. *McDonald v. Century 21 Real Estate Corp.*, 111 Wis.2d 600, 604, 331 N.W.2d 606 (Ct. App. 1983). The Wisconsin Supreme Court has held that reasonable reliance is not an element of a claim under the DTPA but that the reasonableness of a plaintiff's reliance may be relevant in considering whether a representation materially induced the plaintiff to sustain a pecuniary loss. *Novell v. Migliaccio*, 2008 WI 44, ¶ 27, 309 Wis.2d 132, 749 N.W.2d 544 (noting that "the reasonableness of a plaintiff's reliance may be relevant in considering whether the representations materially induced the plaintiff's pecuniary loss . . . ."). Here whether Bassett's representation caused each plaintiff a pecuniary loss will require an individualized analysis by the finder of fact. Did the plaintiff see the Bassett Direct sign prior to paying for furniture? Did the

plaintiff see other indicia of agency prior to paying for furniture? Did each plaintiff put money down on furniture because of Bassett's representation? In order to prevail on a DTPA claim, there will necessarily be an inquiry into whether Bassett' representations caused each plaintiff a loss; whether plaintiffs reasonably relied on the representations may factor heavily into such analysis. A plaintiff could conceivably prevail on a DTPA claim even without proving that he reasonably believed he was dealing directly with Bassett, but resolving such claims lends itself to individual lawsuits rather than a class action.

Finally, damage calculations under the DTPA will require an individualized analysis. As discussed above, Plaintiffs' "benefits of the bargain" theory is not a proper basis for class certification based on the facts present here. Setting aside the 90 or so putative plaintiffs who only suffered purported "benefits of the bargain" damages, the remaining customers – those who paid for furniture they never received – will require individualized damages inquiries under the DTPA. With respect to damages, Wis. Stat. 100.18(11)(b)2. provides: Any person suffering pecuniary loss may . . . recover such pecuniary loss". Each customer's loss in this case is different and will require separate evidence. Thus, damages are yet another reason why resolution via class action for the DTPA claim would be impracticable.

### C. Fraud Claim

Having ruled that class certification is not proper for the breach of contract claim or the DTPA claim because individual issues predominate over common issues, I now turn to the fraud claims Plaintiffs have asserted against both Bassett and Wahlquist. The elements of fraud are: (1) a false representation of fact; (2) made either knowing that it was untrue, or recklessly not caring whether it was true or false; (3) made with intent to deceive the plaintiffs in order to induce the

12

plaintiffs to act on it to plaintiffs' pecuniary damage; and (4) the plaintiffs' detrimental reliance on the representation as true. *Malzewski v. Rapkin,* 2006 WI App 183, ¶ 17, 296 Wis.2d 98, 723 N.W.2d 156; *State v. Ploeckelman,* 2007 WI App 31, 299 Wis.2d 251, 729 N.W.2d 784. Concealment or non-disclosure can also amount to fraud by omission when: (1) there is a duty to disclose; (2) there is an intentional failure to disclose; (3) made with the intent to deceive the plaintiff; (4) thereby inducing the plaintiff to act to his detriment. *See Kaloti Enters., Inc. v. Kellogg Sales Co.,* 2005 WI 111, 283 Wis.2d 555, 699 N.W.2d 205. Because a fraud claim "may be unsuitable for class treatment if there are variations in the representations made or degrees of reliance thereon", *Simer,* 661 F.2d at 674, I must consider whether Defendants allegedly made similar representations to all members of the putative class.

Here Defendants made both common and individual affirmative representations to members of the putative class. Common representations—made to all members of the putative class—include the signs displayed outside the Ewald's Appleton store and the order forms used for all furniture purchases. (Third Am. Compl. ¶ 36.) Individual oral representations were made by salespeople who worked with different customers during different purchases. Depositions have shown that different putative class members talked to different salespeople who told them markedly different things. (Def. Mot. Opp. Class Cert., Dkt. 87 at 15-17.) Such divergent representations included which company manufactured the furniture, whether the customer was purchasing a floor model or a piece of furniture from elsewhere, and statements concerning the relationship between Ewald Enterprises and Defendants. (*Id.*) On balance, individual issues predominate relating to affirmative representations made to individual customers.

13

Plaintiffs' fraudulent concealment claim, as plead in the complaint, comes closer to being appropriate for a class action. At least as plead it appears that common questions relating to fraud by concealment predominate. Key here is what Plaintiffs were *not* told. *Kaloti Enters.,* 2005 WI 111, ¶ 17. Members of the putative class were not told the furniture they ordered and paid toward would only be manufactured and delivered once the Ewalds paid off a related amount of past-due debt to Bassett. They were not told that Ewald Enterprises had to pay down its past-due debt by a full dollar before Bassett would manufacture and ship 75, 50, or 25 cents worth of furniture. (Third Am. Compl. ¶ ¶ 26-28). Customers were not told that "back-ordered" furniture was actually being special ordered. Thus, at least as plead, the Defendants' non-disclosures and omissions would seem to be common to the entire class.

But Plaintiffs concede that, even by their account, what Bassett and Wahlquist knew about the likelihood they would receive the furniture they ordered changed over time. There is no evidence that Bassett and/or Wahlquist knew from the start that the liquidation sale would fail – that debts would not be paid off and that customers would not get their furniture. The liquidation sale did not happen in one weekend but rather took place over seven months – between December 2007 and August 2008. (Third Am. Compl. ¶ 5.) Individual customers paid for furniture on different days during the sale. What Bassett and/or Wahlquist knew in August 2008 would likely have been markedly different from what they knew in December 2007. When the sale kicked off in December of 2007 Bassett and Wahlquist knew that they had worked together in the past and that other liquidation sales around the country had been successful. From this it is clear that even if Plaintiffs are able to show fraudulent nondisclosure on some sales, common issues will not predominate.

14

What the defendants knew, and when they knew it, is a key issue in a fraud by concealment case. *See Black's Law Dictionary* 670 (7th ed.1999) (defining "fraud" as "A knowing misrepresentation of the truth or concealment of a material fact . . ."); *See also Kaloti Enters.,* 2005 WI 111*,* ¶ 19. Since by Plaintiffs' own account, what Wahlquist and Bassett knew changed over time, the strength of the claims will differ based on when the sale occurred. Thus, even as to the claim of fraudulent nondisclosure, commonality is lacking.

**III. Typicality**

The claims in this case also present an issue of typicality. Defendants argue that the class representatives are not typical of the members of the putative class. (Dkt. 87 at 26.) Fed. R. Civ. P. 23(a) requires, among other things, that the claims or defenses of the representative part[y][be] typical of the claims or defenses of the class. *Muro v. Target Corp.,* 580 F.3d 485, 492 (7th Cir. 2009) (omitting internal quotations). Defendants' position is that the class representatives are each unique because some received refunds for the furniture they bought and others didn't. In addition some class members received some of the furniture they ordered, others didn't. Although "[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members," the requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Id.* (quoting *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983). Here, the claims of the named representatives do not have the same essential characteristics as the claims of the class at large insofar as the damages sustained by the class representatives are not typical of the class at large.

## IV. Adequacy

Defendants also argue that Plaintiffs have not demonstrated adequacy of representation. Here the attorney for the putative class action is also the attorney for the Trustee in the bankruptcy action. While this may present a potential conflict of interest, I note the appointment of Attorney Maria Lazar for the Trustee and appointment of Attorney Theodore Hodan for the class, both of whom are accomplished attorneys. Because I conclude that the class should not be certified for the other reasons described above, it is unnecessary to determine whether Plaintiffs would "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

## V. Superiority

Before certifying a class action, a court must take a "close look" at whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 615 (1997). Two factors to be considered are "the interest of members of the class in individually controlling the prosecution or defense of separate actions" and "the difficulties likely to be encountered in the management of a class action." *Id.* at 616. Here many of the individual claims are not large. The complaint alleges that claims range in size from several hundred to $10,000. (Third Am. Compl. at ¶ 32.) Such claims are small but certainly not insignificant. In general, "[t]he class action is an ingenious device for economizing on the expense of litigation and enabling small claims to be litigated." *Thorogood v. Sears, Roebuck and Co.,* 547 F.3d at 744. However, because individual issues predominate on all of Plaintiffs' claims, and because individual determinations of damages will be required, I conclude that a class action would not be a superior method of resolving these claims. *See Dorman v. DHL Express*

*(USA), Inc.,* 2010 WL 446071, at *6 (W.D. Wis. Feb. 3, 2010) (superiority requirement not met where "no economy of time or effort would be served by creating a Rule 23 class).

## CONCLUSION

Accordingly, and for the reasons set forth above, Plaintiffs have not met their burden to show that class certification is appropriate under Fed. R. Civ. P. Rule 23, and the motion for class certification is **DENIED**.

**SO ORDERED** this   10th    day of January, 2011.

                                                  s/ William C. Griesbach
                                                  William C. Griesbach
                                                  United States District Judge